# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| LAJUAN TUCKER<br>613 Beery Blvd<br>Union, OH 45322 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| THE OHIO BELL TELEPHONE CO.<br>d/b/a AT&T Call Center<br>300 W. 1st St<br>Dayton, OH 45402 | ) ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| **Serve also:**<br>The Ohio Bell Telephone Co.<br>c/o CT Corporation System<br>(Stat. Agent)<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 43219 | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, LaJuan Tucker, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES AND VENUE

1. Tucker is a resident of the city of Union, county of Montgomery, state of Ohio.

2. Defendant THE OHIO BELL TELEPHONE CO. d/b/a AT&T Call Center ("Bell") is a domestic company that operates throughout Ohio and the United States. The events that give rise to this Complaint occurred at its AT&T Call Center, located at 300 W. 1st St, Dayton, OH 45402.



The Employee's Attorney.™

3. Bell is and was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C §2000e, *et seq.*, 42 U.S.C §12101, *et seq.*, 29 U.S.C. § 2617 *et seq.*, and Ohio R.C. § 4112, *et seq.*

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Tucker is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e, *et seq.*, The Americans With Disabilities Act ("ADA"), 42 U.S.C §12101, *et seq.*, Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617 *et seq.*, and the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k) *et seq*.

5. All material events alleged in this Complaint occurred in the county of Montgomery.

6. This Court has supplemental jurisdiction over Tucker's state law claims pursuant to 28 U.S.C. § 1367 as Tucker's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 180 days of the conduct alleged below, Tucker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-00088.

9. On or about October 22, 2018, the EEOC issued and mailed a Notice of Right to Sue letter to Tucker regarding the Charges of Discrimination brought by Tucker.

10. Tucker received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Tucker has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.



12. Tucker has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Tucker is a former employee of Bell.

14. Tucker worked for Bell in customer service/loyalty retention from March 18, 2015, until Bell terminated Tucker's employment on or about February 15, 2018, citing attendance.

15. The early portion of Tucker's employment went well, until things changed in or around early 2017.

16. In or around January 2017, Tucker was pregnant, but began to have medical complications with the pregnancy.

17. Tucker applied for, and was granted, FMLA leave for those issues.

18. Unfortunately, Tucker had a miscarriage soon after.

19. Piling onto the already terrible situation, Tucker began to feel post-partum depression and began to have other issues with one of her children.

20. Tucker was eventually written up, on or about February 13, 2017, for her attendance.

21. Tucker then continued her intermittent FMLA leave through June 2017.

22. In or around June 2017, Tucker fell ill and missed two days of work.

23. Tucker also began to have further issues with one of her children and began to see a counselor about those issues and her stress from work. She also saw a medical doctor, who told her to take some time off to deal with her depression and anxiety.

24. Tucker then used the rest of her FMLA leave to take time off for self-care and to deal with her family issues.



25. When Tucker returned to work in or around September 2017, she continued to have issues with her medications and was forced to take another week off.

26. Bell told Tucker that company policy was to roll that time over into short-term disability.

27. From September 4 through October 3, 2017, Tucker was out of work for short-term disability. It was labelled as a new request, and so she had to have her doctor resubmit the relevant paperwork.

28. At that point, Tucker had used the entirety of her FMLA leave, and Bell did not always approve the next-requested time off.

29. Tucker then also missed October 3-13, 2017 for the same reasons she had missed prior. She was given a one-day suspension because of this, on or about November 1, 2017.

30. Right around that day, Tucker's FMLA leave renewed and she used it for the previous days missed. Bell gave her back-pay for the day suspended but did not remove the write-up from her employee records.

31. After Bell retracted that suspension, Tucker found that her missed days, from October 27-31, were not covered by her FMLA leave.

32. Tucker reapplied for short-term disability, but she was found not to be disabled at that time (she later appealed this finding).

33. On or about December 5, 2017, Tucker was given a final warning and a three-day suspension (from December 7-12, not including the weekend-days).

34. At that point, Tucker's discipline should have reverted as her renewed FMLA leave retracted her previous one-day suspension.

35. Tucker's union representative told her that her attendance points had been "double-stepped" for that discipline.



36. Tucker went to work on or about December 4 and 5, 2017. Unfortunately, she then had further issues with her children.

37. Tucker called IDSC asking for information on time off to deal with that issue. She was pointed to departmental leave, rather than further FMLA or short-term disability.

38. Tucker was told that this departmental leave was not discretionary, and so did not require approval from her manager. Regardless, she told her manager, Latonia Malone, who approved the leave anyway.

39. Tucker then wrote a complaint to HR about Malone's refusal to speak with her about her issues and the disparate treatment she felt from Bell, problems she had had for some time.

40. Tucker was then out from December 16 until January 2, 2018. She then renewed the leave again for follow-up appointments with doctors for her children, to end on January 22, 2018.

41. Prior to renewing the leave, Tucker called Malone to discuss.

42. Malone denied the renewed leave, but said she would defer to Tucker's attendance manager, Daphne (LNU).

43. Daphne (LNU) also refused to grant the leave, citing a reason that Tucker had not given sufficient notice to Malone beforehand. This was not true, Tucker had in fact told Malone within the right time frame, but Malone did not go through the effort to grant the request, instead letting time run out.

44. Because Tucker could not extend the leave, she went back to work, intermittently using her PTO to call off when necessary.

45. Tucker spoke further with her union rep a few times during this timeframe, as Malone was still spotty in her responses, at best, when Tucker spoke with her about her issues.



The Employee's Attorney.™

46. On or about February 14, 2018, Tucker attended a union meeting, and spoke further with her rep about her options to deal with her familial issues going forward.

47. Tucker was offered a "last chance agreement," meaning she could not miss for another year, or else face termination.

48. Tucker was told her supervisor had allowed this before, as the issues were familial rather than for the employee him or herself.

49. However, the next day, Tucker got a call from her union representative saying that she would be terminated regardless.

50. Tucker asked for a termination letter but was told they are not usually extended.

51. Upon information and belief, Defendant has a progressive discipline policy.

52. Defendant violated their own progressive discipline policy when they terminated Tucker's employment without notice and without cause. It also ignored the "last chance agreement" it offered then rescinded.

53. Upon information and belief, Defendant do not violate their own progressive disciplinary policy when they terminate the employment of non-pregnant, non-disabled employees.

54. Tucker was actually terminated due to her pregnancy and/or disability.

55. Defendant's purported reason for terminating Tucker's employment is pretext for pregnancy and disability discrimination.

56. Upon information and belief, Defendant hired a non-disabled, non-pregnant person to replace Tucker.

57. As a result of being wrongfully terminated from Bell, Tucker has suffered severe emotional distress, anxiety, and depression.



## COUNT I: SEX/PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

58. Tucker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

59. In or around late 2016 or early 2017, Tucker discovered she was pregnant.

60. In or around January 2017, Tucker informed Defendant of her pregnancy.

61. Under the Pregnancy Discrimination Act provisions of Title VII, 42 U.S.C. § 2000e(k), discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited.

62. Tucker is a member of a statutorily protected class based on her pregnancy under Title VII.

63. Defendant knew about Tucker's pregnancy.

64. Despite her pregnancy, Tucker was fully capable and qualified to perform the essential functions of her job.

65. Defendant treated Tucker differently than other similarly situated, non-pregnant employees based on her protected class.

66. On or about February 15, 2018, Defendant terminated Tucker's employment due to her pregnancy.

67. Defendant discriminated against Tucker on the basis of her pregnancy by, among other ways, failing to accommodate Tucker and terminating her employment with Bell.

68. Defendant's discrimination against and discharge of Tucker based on her pregnancy violates Title VII.

69. Defendant violated Title VII when they terminated Tucker's employment with Bell based on her pregnancy.

70. Upon information and belief, Defendant replaced her with someone outside her protected class.



71. As a direct and proximate result of Defendant's conduct, Tucker suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: SEX/PREGNANCY DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE § 4112.02(A), ET SEQ.**

72. Tucker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. In or around late 2016 or early 2017, Tucker discovered she was pregnant.

74. In or around January 2017, Tucker informed Defendant of her pregnancy.

75. Ohio R.C. § 4112.01(B) prohibits discrimination on the basis of "pregnancy, any illness arising out of and occurring during the course of pregnancy, childbirth, or related medical conditions."

76. Tucker is a member of a statutorily protected class based on her pregnancy under Ohio law.

77. Defendant knew about Tucker's pregnancy.

78. Despite her pregnancy, Tucker was fully capable and qualified to perform the essential functions of her job.

79. Defendant treated Tucker differently than other similarly situated, non-pregnant employees based on her protected class.

80. On or about February 15, 2018, Defendant terminated Tucker's employment due to her pregnancy.

81. Defendant discriminated against Tucker on the basis of her pregnancy by, among other ways, failing to accommodate Tucker and terminating her employment with Bell.

82. Defendant's discrimination against and discharge of Tucker based on her pregnancy violates Ohio R.C. § 4112.01, *et seq*.

83. Defendant violated R.C. § 4112.02 when they terminated Tucker's employment with Bell based on her pregnancy.

The Employee's Attorney.™



84. Upon information and belief, following the termination of Tucker's employment with Bell, Defendant replaced her with someone outside her protected class.

85. As a direct and proximate result of Defendant's conduct, Tucker suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101**

86. Tucker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

87. Due to the at-risk nature of her pregnancy and subsequent depression and anxiety, Tucker was disabled under the ADA.

88. In the alternative, Defendant perceived Tucker as disabled due to the at-risk nature of her pregnancy and subsequent depression and anxiety.

89. Tucker notified Defendant she was disabled due to the at-risk nature of her pregnancy and subsequent depression and anxiety.

90. Defendant were aware that Tucker was disabled under the ADA.

91. Tucker's disabilities substantially impaired one or more major life activity under the ADA.

92. Despite her disabling condition, Tucker was fully competent and qualified for her work with Bell.

93. Despite her disabling condition, Tucker was still able to perform the essential functions of her job.

94. Tucker requested reasonable accommodations, including a modified schedule and/or modified duties to accommodate her work restrictions.

95. Defendant denied Tucker's requests and/or falsely promised to grant Tucker's requests only to later fail to honor those promises, refused to provide any reasonable accommodations, and refused to permit Tucker to continue to work, despite her ability and willingness to do so.

96. Defendant treated Tucker differently than other similarly-situated employees based on her disabling condition.

97. On or about February 15, 2018, Defendant terminated Tucker's employment due, at least in part, to her actual or perceived disabilities.

98. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

99. Defendant violated the ADA by terminating Tucker because of her actual and/or perceived disabilities.

100. As a direct and proximate cause of the Defendant's conduct, Tucker has suffered and will continue to suffer damages.

**COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112, ET SEQ.**

101. Tucker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Due to the at-risk nature of her pregnancy and subsequent depression and anxiety, Tucker was disabled under Ohio R.C. § 4112.01(13).

103. In the alternative, Defendant perceived Tucker as disabled due to the at-risk nature of her pregnancy and subsequent depression and anxiety.

104. Tucker notified Defendant that she was disabled due to the at-risk nature of her pregnancy and subsequent depression and anxiety.

105. Defendant was aware that Tucker was disabled under Ohio law.

106. Tucker's disabilities substantially impaired one or more major life activity.

107. Despite her disabling condition, Tucker was fully competent and qualified for her with Bell.



108. Despite her disabling condition, Tucker was still able to perform the essential functions of her job.

109. Tucker requested reasonable accommodations, including a modified schedule and/or modified duties to accommodate her work restrictions.

110. Defendant denied Tucker's requests and/or falsely promised to grant Tucker's requests only to later fail to honor those promises, refused to provide any reasonable accommodations, and refused to permit Tucker to continue to work, despite her ability and willingness to do so.

111. Defendant treated Tucker differently than other similarly-situated employees based on her disabling condition.

112. On or about February 15, 2018, Defendant terminated Tucker's employment due, at least in part, to her actual or perceived disabilities.

113. Ohio R.C. § 4112.02 provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

114. Defendant violated R.C. § 4112.02 by terminating Tucker because of her actual and/or perceived disabilities.

115. As a direct and proximate cause of the Defendant's conduct, Tucker has suffered and will continue to suffer damages.

## COUNT V: RETALIATION

116. Tucker restates each and every prior paragraph of this complaint, as if it were fully restated herein.

117. As a result of the Defendant's discriminatory conduct described above, Tucker complained of the discrimination, harassment, and disparate treatment she was experiencing.



118. Subsequent to Tucker's complaints to Bell, Defendant took adverse employment actions against Tucker, including terminating her employment.

119. Defendant's actions were retaliatory in nature based on Tucker's opposition to the unlawful discriminatory conduct.

120. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

121. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Tucker, she has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: RETALIATION IN VIOLATION OF THE FMLA

122. Tucker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. During her employment, Tucker utilized FMLA leave.

124. After Tucker utilized her qualified FMLA leave, Defendant retaliated against her.

125. Defendant terminated Tucker on or about February 15, 2018.

126. Defendant's proffered reason for Tucker's termination was pretextual.

127. Defendant actually terminated Tucker for her FMLA use.

128. Defendant retaliated against Tucker by terminating her employment.

129. Defendant willfully retaliated against Tucker in violation of U.S.C. § 2615(a).

130. As a direct and proximate result of Defendant's wrongful conduct, Tucker is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.



**DEMAND FOR RELIEF**

WHEREFORE, Tucker demands from Defendant the following:

(a) Issue a permanent injunction:

    (i)      Requiring Defendant to abolish discrimination, harassment, and retaliation;

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Tucker to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Tucker for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;



(e) An award of reasonable attorneys' fees and non-taxable costs for Tucker's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

    Respectfully submitted,

    */s/ Matthew G. Bruce*
    Matthew Bruce (0083769)
        Trial Attorney
    **THE SPITZ LAW FIRM, LLC**
    25200 Chagrin Blvd., Suite 200
    Beachwood, OH 44122
    Phone: (513) 883-1147
    Fax:   (216) 291-5744
    Email: Matthew.Bruce@spitzlawfirm.com

    *Attorney for Plaintiff LaJuan Tucker*

## JURY DEMAND

Plaintiff LaJuan Tucker demands a trial by jury by the maximum number of jurors permitted.

    */s/ Matthew G. Bruce*
    Matthew Bruce (0083769)

